IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 09-CV-00967-RBJ-MJW

ALLSTATE INSURANCE COMPANY,

    Plaintiff,

v.

THE WEST AMERICAN INSURANCE COMPANY,

    Defendant.

---

ORDER on PENDING MOTIONS

---

This is an insurance coverage case recently reassigned to this Court. There are four motions pending.

### I.    MOTIONS FOR SUMMARY JUDGMENT [docket #s 185, 186].

Both parties have filed motions for summary judgment. A motion for summary judgment may be granted only if there is no genuine dispute of any material fact, and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The notion that there are no genuine disputes of fact here is undercut by the sheer volume of the parties' presentations and the fact that they dispute one another's statements of "undisputed facts."[1]

**Facts**

---

[1] Plaintiff's 21-page motion is supported by 40 exhibits totaling 465 pages of documents. Defendant's 30-page response is supported by 32 exhibits totaling 218 pages of documents. Plaintiff's 25-page reply is supported by nine exhibits totaling 92 pages of documents. Defendant's 21-page motion is supported by 28 exhibits totaling 189 pages of documents. Plaintiff's 28-page response is supported by 40 exhibits totaling 472 pages of documents. Defendant's 22-page reply is supported by eight exhibits totaling 97 pages of documents. These numbers are somewhat overstated in the sense that the motions, responses and replies largely duplicate each other. Defendant disputes 13 of plaintiff's "undisputed facts." Plaintiff disputes three of defendant's counter list of 25 "undisputed facts" outright and 13 as to their materiality.

1

This case arises from an underlying action filed in state court, *The Corral at Breckenridge Homeowners Association, Inc. v. Towback Partners, LLC; Mountain West Lodging, LLC; and Tim L. Currin*, No. 06CV184 (Summit County District Court). Towback was the developer and builder of the Corral at Breckenridge condominium development that was completed in stages between December 1996 and August 2000. Mountain West Lodging ("MLW") was the property manager from June 24, 1997 through May 1, 2005. Mr. Currin was an owner and manager of both Towback and MLW. In the suit, filed in June 2006, plaintiff alleged that the defendants were responsible for a variety of construction and maintenance problems and sought damages on claims of negligence (all defendants) and various other theories.

The plaintiff in the present case, Allstate, was the commercial liability insurer of Towback (and Currin) under a series of policies during the period September 1996 through June 3, 2005. Allstate insured MWL under a series of general liability policies from July 1 1997 through July 1 2003. The defendant in the present case, West American, insured MWL (and Currin) under a series of general liability policies from July 1, 2003 to July 1, 2007.

In August 2008 the parties to the underlying suit entered into a settlement agreement. Ex. B to Defendant's motion for summary judgment. Plaintiff released all three parties in exchange for a payment by the defendants of $7,704,000. Allstate paid $7,404,000 of that amount. The remaining $300,000 was paid by third-party defendants not involved in the present case. Allstate declined West American's offer to contribute $25,000 to the settlement. Allstate has obtained an assignment of MWL's and Currin's rights as insureds under the West American policies.

Allstate now seeks a substantial contribution to the settlement from West American on theories of (1) breach of contract, i.e., the duty to indemnify MWL and Currin; (2) equitable

contribution; (3) equitable subrogation; (4) equitable indemnity; and (5) breach of the covenant of good faith and fair dealing. Essentially, it claims that property damage occurred during both insurers' policy periods; that the liability of Towback, MWL and Currin for the property damage was joint and several; and that by fully settling the claims against all three defendants it paid more than its share. West American responds that it has no contractual liability to its insureds (or thereby to its insureds' assignee) because of a "Real Estate Property Managed" endorsement to its insurance policies. Alternatively, West American denies that property damage occurred during its policy period. West American also denies that it has liability on any of the equitable theories.

**Conclusions**

The only reasonable way I could come up with for organizing the mass of arguments and evidence presented in the motions is first to address the one legal issue that is potentially dispositive and then, because I conclude that it is not dispositive, to look at the plaintiff's claims (other than the declaratory judgment claim, which is inherent in all the claims) one by one. I finally consider the prayers for exemplary damages, treble damages and attorney's fees.

**1. The "Real Estate Property Managed" Endorsement.**

If construed as West American urges, this endorsement is dispositive of the case. It states:

> This insurance does not apply to "property damage" to property you operate or manage or as to which you act as agent for the collection of rents or in any other supervisory capacity.
>
> Which [sic] respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collective insurance available to you.

Ex. T to West American's motion.

West America, citing the first paragraph of the endorsement, argues that because the alleged property damage was caused by MWL in its role as the property manager for the condominium development, there is no coverage. The first paragraph could rationally be interpreted in that manner.

However, the second paragraph indicates that liability arising from MWL's management of the property is covered, albeit excess to other applicable coverage. At a minimum this creates a facial inconsistency and therefore an ambiguity. Ambiguities in insurance policies are construed in favor of the insured. *See, e.g., Republic Ins. Co. v. Jernigan,* 773 P.2d 229, 232 (Colo. 1988). The two paragraphs can also be read as consistent – damage to property managed by MWL caused by third parties is not covered, but damage caused by MWL is covered. Either way, the Court concludes as a matter of law that this endorsement does not exclude coverage in this case. *See Public Service Mat. Ins. Co. v. Capitol Transamerica Corp.,* 756 F. Supp. 2d 920, 925 (N.D. Ill. 2010). *See also State Farm Fire and Casualty Co. v. American Economy Ins. Co.,* 2006 WL 5217834 (D. Colo. March 2, 2006).

**2. Plaintiff's Second Claim (Breach of Contract).**

Plaintiff as assignee of the rights of MWL and Currin asserts that West American broke its contractual obligation to indemnify them in respect to the claims in the underlying case. The policies provide that West American "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."

As a result of the settlement, MWL and Currin became legally obligated to pay damages because of property damage. *Cf. MIC Property and Cas. Ins. Corp. v. International Ins. Co.,* 990 F.2d 573, 577 (10th Cir. 1993)(decided under Oklahoma law). *See also Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 301-02 (Colo. 2003).

Plaintiff argues that there is "overwhelming evidence" that some of this property damage occurred during the West American policy periods. West American responds that Allstate has not proven that particular items of property damage occurred during particular West American policy periods. Summary judgment motions are not the occasion for proof of the merits. The issue simply is whether there are genuine fact disputes. The Court finds that the parties' submissions have raised a genuine issue of material fact as to whether, when and to what extent property damage caused by an occurrence occurred during any or all of the West American policy periods.

West American also argues that MWL and Currin did not sustain damage, because West American provided a defense, and Allstate paid the settlement. However, Allstate has stepped into the shoes of MWL and Currin and has indeed sustained damage by paying money to obtain a release of the claims against them.

Finally, West American argues that the "known loss" clause in its policies bars coverage under the 2005-06 and 2006-07 policies, because MWL and Currin received notice of the homeowners' association's claim in June 2005, before the July 1, 2005 inception date of the 2005-06 policy. Plaintiff does not respond. I agree with West American.

**3. Plaintiff's Third Claim (Equitable Contribution).**

Both parties cite *American Cas. Co. of Reading Pa. v. Health Care Indemnity, Inc.,* 520 F.3d 1131, 1139 (10th Cir. 2008). That case, although decided under Oklahoma law, held that equitable contribution is a means of apportioning a loss between two or more insurers who cover the same risk so that each insurer pays its fair share of the common obligation. Equitable contribution is also recognized under Colorado law. *See, e.g., National Casualty Co. v. Great Southwest Fire Ins. Co.,* 833 P.2d 741, 747-48 (Colo. 1992).

West American argues that for the right of equitable contribution to exist, the policies of the two insurers must cover the same time periods. I did not find that requirement in the cited cases. Rather, the issue was whether the insurers covered a common risk. Without reaching or deciding whether there can be a common risk notwithstanding that the policies do not overlap in time, I simply note that Mr. Currin was insured by both Allstate and West American at least during the period July 1, 2003 through June 3, 2005.

Somewhat related is West American's argument that because the settlement was not allocated among Towback, MWL and Currin, it cannot be allocated in this coverage suit. However, that assumes that the damages sustained by the homeowner's association were divisible among the three insureds. *Cf. Friedland v. TIC-The Industrial Co.,* 2008 WL 185693 *2 (D. Colo. Jan. 18, 2008), *aff'd* 566 F.3d 1203, 1209-10 (10th Cir. 2009). Whether the damages were divisible is a disputed issue of fact in this case.

Finally, West American argues that because Allstate paid the entire settlement under Towback policies and in reference to a Towback claim number, there can be no equitable contribution. I fail to see how that fact, whatever Allstate's reasons for structuring its payment in that manner, makes a difference in this case, any more than it would matter what bank account was used to supply the funds. The key fact is that Allstate's payment settled all claims against MWL and Mr. Currin. If those claims triggered coverage under the West American policies, then potentially there is a claim for equitable contribution. Otherwise, West American could be rewarded for refusing to honor it contractual obligation to its insured. *See National Cas. Co., 833P.2d at 748.*

### 4. Plaintiff's Fourth Claim (Equitable Subrogation).

West American argues that there is no basis for a claim of "equitable subrogation," because Allstate has a claim for "legal subrogation" under the terms of its insurance contracts with MWL and Currin.  *See American Family Mut. Ins. Co. v. DeWitt,* 218 P.3d 318, 323 (Colo. 2009).  Allstate does not respond in any substantive way.  I agree with West American and grant partial summary judgment dismissing the equitable subrogation claim.

**5.   Plaintiff's Fifth Claim (Equitable Indemnity).**

West American argues that equitable indemnity, in contrast to equitable contribution, is inappropriate, because Allstate does not seek to shift the entire loss to West American.  Plaintiff does not respond.  I agree with West American.  The motion is granted as to the fifth claim.

**6.   Plaintiff's Sixth Claim (Breach of the Covenant of Good Faith and Fair Dealing).**

A covenant of good faith and fair dealing is implied in all contracts including insurance contracts.  In insurance cases, however, an alleged breach of the covenant, sometimes referred to as a "bad faith" claim, can give rise to liability in tort.  Because this claim is not addressed in the pending motions, I will not address it.

**7.   Exemplary and Treble Damages and Attorney's Fees.**

West American moves in effect to strike the prayer for exemplary damages.  Such a claim can be asserted, if at all, only in respect to the sixth claim.  West American argues that in response to discovery plaintiff could identify no factual basis for an exemplary damages claim; that plaintiff has never provided either a statutory or other basis for a treble damages claim; and that under the "American Rule," there is no basis for an award of attorney's fees in the absence of a contract or statute that provides for such an award.  Plaintiff does not respond to these arguments.

I agree with West American. Even assuming that it was appropriate to include a prayer for exemplary damages in the Second Amended Complaint, but *cf.* C.R.S. 13-21-102(1.5)(a), plaintiff has come forward with no facts indicating that there is a prima facie case for exemplary damages in this case. Plaintiff has provided no authority for a prayer for treble damages or for a prayer for attorney's fees. Accordingly, those parts of the prayer for relief are stricken.

### Order on Motions for Summary Judgment

West American's motion for summary judgment is granted as to its 2005-06 and 2006-07 policies as to all claims. West American's motion for summary judgment is also granted as to Allstate's Fourth and Fifth Claims. Plaintiff's prayers for exemplary and treble damages and for attorney's fees are stricken. West American's motion for summary judgment is otherwise denied. Allstate's motion for summary judgment is denied.

## II. PLAINTIFF'S OBJECTION TO ORDER DATED APRIL 6, 2011 [DOCKET #211]

Plaintiff objects to an order issued by Magistrate Judge Watanabe on April 6, 2011. The order addresses a narrow issue, i.e., whether two affidavits tendered in support of plaintiff's motion for summary judgment should be stricken. I find that the issue is moot. The Court has considered the affidavits and finds that, even if considered, they would not change the Court's conclusion that plaintiff's motion for summary judgment must be denied. Accordingly, the objection is denied.

### III.  ALLSTATE INSURANCE COMPANY'S MOTION IN LIMINE [DOCKET #219]

This motion seeks rulings in advance of trial on the relevance of three categories of evidence. Defendant argues that the evidence is relevant. Motions in limine are always subject to the discretion of the Court. Because this is a bench trial, and the Court will have to consider the evidence in order to determine whether it is relevant, the Court elects to determine the evidentiary issues in the context of the parties' opening statements and all evidence tendered by the parties during the trial. Accordingly, without finding that the three categories are necessarily relevant, the motion is denied.

### IV.  MOTION PRACTICE IN THIS CASE

The Court reviewed the entire file in connection with the pending motions. The file is replete with motions. The motions, responses and replies are almost always lengthy and are often supported by numerous exhibits. There are indications that more motions are coming. The Court does not wish to preclude either party from filing necessary motions. However, the Court discourages both parties from filing additional motions unless they are critically important and cannot be resolved by a good faith conference between counsel. The Court also requests that any additional motions and briefs be short, not repetitive of prior filings, and not burdened with excessive exhibits.

DATED this 21st day of November, 2011.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge